IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                                   18-CR-6050-EAW

DEBORAH SIEGEL-EDELMAN,

        Defendant.
_____

## STATEMENT OF THE GOVERNMENT
## WITH RESPECT TO SENTENCING FACTORS
## AND RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

**PLEASE TAKE NOTICE**, the United States hereby adopts all findings of the July 20, 2018 revised Presentence Investigation Report (ECF No. 21) with respect to sentencing factors in this action, and which calculates the advisory sentencing guideline range to be 151 to 188 months imprisonment.

Should the defendant present any additional letters of support to the Court, the United States will move to strike the items from the record if this office is not provided with copies at least three business days prior to sentencing.

The defendant is required by Title 18, United States Code, Section 3013 to pay the sum of $400 at the time of sentencing. Immediately after sentencing, the defendant must pay the amount due by personal check, cashier's check or certified funds to the United States District Court Clerk.

The United States reserves the right to respond to any filings made by the defendant.

1

**I.    THE SECTION 3553(a) FACTORS SUPPORT A SENTENCE WITHIN THE GUIDELINE RANGE FOR IMPRISONMENT**

In reviewing the Section 3553(a) factors, as enumerated in Title 18 of the United States Code, the government respectfully requests the Court particularly consider the need for the sentence to reflect the nature and circumstances of the offenses; the seriousness of the offenses; to promote respect for the law; to provide just punishment for the offenses; and to afford adequate deterrence to criminal conduct. *See* Title 18, United States Code, Sections 3553(a)(1) and (a)(2). The United States respectfully asks this Court to impose a sentence within the advisory guideline range of 151 to 188 months imprisonment, as such a sentence is just, warranted, and appropriate under the law and under the facts and circumstances of this case.

**A.    AN INDIVIDUALIZED ASSESSMENT OF THIS DEFENDANT SUPPORTS THE IMPOSITION OF A SENTENCE WITHIN THE GUIDELINES RANGE FOR IMPRISONMENT**

It is well settled that calculating the advisory sentencing guidelines is the first step in determining the defendant's ultimate sentence, after which the Court must consider the Section 3553(a) factors. *United States v. Dorvee*, 616 F.3d 174, 180 (2d Cir. 2010) quoting *United States v. Gall*, 552 U.S. 38, 49-50 (2007); *see also United States v. Aumais*, 656 F.3d 147 (2d Cir. 2011). Under this approach, district courts must consider the advisory sentencing guidelines, but ultimately base the appropriate sentence on an "individualized assessment" of the Section 3553(a) factors. *Aumais*, 656 F.3d at 157.

Here, the parties and the probation officer agree on the relevant guidelines calculations, and neither party has any objections to the PSR. As such, the Court should adopt those calculations, which result in an advisory guideline range of 151 to 188 months imprisonment.

For the reasons that follow, in considering the Section 3553(a) factors as applied individually to this Defendant, the Court should determine that a sentence within the advisory guideline range is both appropriate and required.

### B. THE DEFENDANT PLAYED AN IMPORTANT ROLE IN THE COMMISSION OF FOUR ARMED ROBBERIES

The facts of this case are not in dispute. In short, Deborah Siegel-Edelman ("Defendant") was part of a commercial robbery crew in Rochester, New York that committed a series of armed robberies at small neighborhood grocery stores during the month of September 2017. Along with co-defendants Dylan Miller, Damien Rutledge, Jonathan Middlebrooks and Nasir Perez, Defendant was a key participant in four robberies: (1) the September 14, 2017 armed robbery of 18 Hour Store, 551 North Goodman Street, Rochester, New York; (2) the September 18, 2017 armed robbery of Four Star Market, 583 Lake Avenue, Rochester, New York; (3) the September 23, 2017 armed robbery of Bronx Market, 594 Brown Street, Rochester, New York; and (4) the September 23, 2017 armed robbery of Greyhound Express Mini Mart, 479 Carter Street, Rochester New York[1].

During each of the first three robberies, co-defendant Miller pointed a handgun at a store employee and the robbery crew stole money (and in many instances, merchandise) from the stores. The fourth robbery proceeded in the same fashion as the first three, except there, the robbery was interrupted when the store owner fought back. During a struggle between the owner and co-

---

[1] The other co-defendants committed an additional robbery. Defendant Siegel-Edelman was not part of that robbery, so the government's sentencing submission as to this Defendant refers simply to the four robberies she participated in.

3

defendant Miller, the owner's nose was broken, co-defendant Miller's handgun was discharged, and the discharged round struck co-defendant Middlebrooks.

Defendant's role in each of the four robberies was the same: she drove her co-defendants to the general vicinity of the stores that they planned to rob, and her co-defendants then exited her car and walked a block or so to the target store. During the robberies, Defendant remained in her car, waiting for her co-defendants to commit the robbery and then return to Defendant's car with the take from the robbery. After the four robberies, the co-defendants returned to Defendant's vehicle and Defendant drove away with her co-defendants and the take from the robberies, and returned to 390 Ravine Avenue, which at the time was the residence of Defendant and several of her co-defendants. Law Enforcement executed a search warrant at 390 Ravine Avenue on October 26, 2017, and amongst the items recovered from the kitchen of the house were three cash register drawers. Defendant was Mirandized and interviewed on the date of the search warrant execution, but she denied having knowledge of, or involvement in, this string of robberies. Ultimately, by way of her guilty plea to the four robberies, she acknowledged her role in this commercial robbery crew.

The government does not dispute that Defendant remained in her car during each of the four robberies. Indeed, that was her role: she was the getaway driver. But that distinction does not lessen her culpability, in that her role was no less important than a co-defendant who stood as a look-out at the front door, or a co-defendant who removed merchandise from the store. Put simply, her role was critical to the success of the operation: she transported the rest of the robbery crew to the vicinity of the stores, waited close enough to the store so they could make a quick getaway, but stayed far enough away from the stores as to not be spotted by store employees or

witnesses, nor to be caught on store surveillance cameras. Defendant candidly acknowledges her role in these crimes as the getaway driver, and she admits in her sentencing statement that she facilitated robberies that carried the risk of serious harm or even death to others.

As stated, the salient facts of the case and the offense are not in dispute. Where the parties differ is on the appropriate sentence in this case.

Applying the §3553(a) factors to this Defendant, a sentence within the advisory guideline range is appropriate. There is no doubt that the offenses here are serious, involved the use of a firearm and could have resulted in serious injury or death – indeed, a co-defendant was shot during the final attempted robbery. This case does not involve a one-time or spur of the moment offense. Rather, this case involves a series of planned out robberies, executed in a similar fashion, and with roles set for the participants in the robbery crew. They also took place over several weeks, further demonstrating they were not an aberration, but instead were part of a plan carried out by Defendant and her co-defendants.

The Court's sentence must also provide adequate deterrence to criminal conduct, promote respect for the law, and to provide just punishment for the offense. The conduct involved in this case – holding hard working individuals at corner grocery stores at gunpoint and robbing the stores – simply cannot be tolerated. The Court's sentence must send a message to the public that such conduct is not acceptable, and should further send the message that robberies (especially gunpoint robberies) are serious offenses, and will be punished in such a way that reflects the seriousness of the conduct and that will also deter other individuals from engaging in similar conduct in the future.

These armed robberies have had an impact on the community as well. For each of the store employees, their lives have been forever changed. Being held up at gun point is a harrowing

5

experience, and is something no person should have to endure. In this case, the manager of Four Star Market at 583 Lake Avenue submitted a victim impact statement which tells the Court that they "had one employee quit and move out of New York State as a direct result of this crime." During the robbery at Greyhound Express located at 479 Carter Street, the owner was working with his two sons, who were 11 and 18 at the time. The 18 year old son removed co-defendant Miller's gun from his hand, and ultimately pointed it at co-defendant Middlebrooks, and when Middlebrooks advanced (and while Miller was still struggling with his father, the owner), the 18 year old discharged the weapon, while his 11 year old brother looked on. Watching the video of this incident is harrowing. One can only imagine the impact that event would have on an 11 year old and an 18 year old – and even a large impact on the 52 year old store owner. These experiences will be with these victims for the rest of their lives, and the victims should have been able to run their businesses free from individuals committing armed robberies. The Court's sentence should tell the community that if you choose to engage in armed robberies, you will be met with serious consequences.

Finally, in Defendant's plea agreement, the parties agreed that a three level upward departure under U.S.S.G. §5K2.21 was appropriate "to take into account a potential charge under Title 18, United States Code, Sections 924(c)(1)(a)(i) and 2 (aiding and abetting the possession of a firearm in furtherance of a crime of violence) that defendant could have faced as a result of her actions in connection with the events underlying Count 4 that occurred on September 23, 2017." ECF No. 16, at ¶10. As such, Defendant's comparison to the Quick Facts section for individuals sentenced without a 924(c) conviction is, in the government's view, not a correct comparison. Rather, a more accurate comparison to the Quick Facts statistics would be to those sentenced with

a 924(c) conviction[2], and the corresponding average sentence of 173 months – which is within Defendant's advisory guidelines range of 151 to 188 months.

## CONCLUSION

For all of these reasons, the Court should impose a sentence that is within the advisory guideline range of 151 to 188 months.

DATED: August 16, 2018, at Rochester, New York.

                                    JAMES P. KENNEDY, JR.
                                    United States Attorney

BY:    S/Sean C. Eldridge
          SEAN C. ELDRIDGE
          Assistant United States Attorney
          United States Attorney's Office
          Western District of New York
          100 State Street, Suite 500
          Rochester, New York 14614
          585-399-3953
          Sean.Eldridge@usdoj.gov

---

[2] As the Court knows, Defendant was not convicted of a 924(c) charge.  However, the government believes this comparison is appropriate since the purpose of the 5K2.21 enhancement is to "reflect the actual seriousness of the offense based on conduct (1) underlying … a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range."